IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LARA M.,[1] | Case No. 6:18-cv-00880-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Lara M. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her applications for child insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.[2] The only issue in dispute on appeal is whether the Court should remand this case for further

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Claimants are eligible for child insurance benefits if they have a disability that began before the age of twenty-two. *Buitron v. Berryhill*, 680 F. App'x 618, 618-19 (9th Cir. 2017) (citation omitted).

proceedings or an award of benefits. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court grants in part the Commissioner's motion to remand and remands this case for an award of benefits.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATIONS

Plaintiff was born in August 1987, making her twenty-one years old on December 1, 2008, the alleged disability onset date. (Tr. 24, 81, 97.) Plaintiff graduated from high school and earned an associate's degree. (Tr. 30, 34, 53, 55.) Plaintiff has past relevant work experience as a

medical records coder and forest worker. (Tr. 34, 72-74.) In her applications for Social Security benefits, Plaintiff alleges disability due primarily to bipolar disorder and depression. (Tr. 54, 62, 1210.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on April 22, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 24.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on February 28, 2017. (Tr. 50-79.) On April 26, 2017, the ALJ issued a written decision denying Plaintiff's applications for benefits. (Tr. 24-36.) Plaintiff now seeks judicial review of that decision.

## II. THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

PAGE 3 – OPINION AND ORDER

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## III.  THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 24-36.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 1, 2008, the alleged disability onset date. (Tr. 26.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[B]ipolar disorder; major depressive disorder; [and] gastroesophageal reflux disease (GERD)." (Tr. 26.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 27.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform medium work, subject to these limitations: (1) Plaintiff cannot be exposed to workplace hazards, such as moving machinery and unprotected heights, (2) Plaintiff can "understand, remember, and carry out only short and simple instructions and can only make simple work-related judgments and decisions," and (3) Plaintiff can have no more than "frequent interactive contact" with the general public, coworkers, and supervisors. (Tr. 28.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a medical records coder and forest worker. (Tr. 34.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a photocopy machine operator, dishwasher, and shelving clerk. (Tr. 35.)

# DISCUSSION

As discussed above, the only issue in dispute on appeal is whether the Court should remand this case for further administrative proceedings or an award of benefits. As explained below, Plaintiff satisfies the credit-as-true standard, and the Court does not have serious doubt about whether Plaintiff is disabled. Accordingly, the Court grants in part the Commissioner's motion to remand and remands this case for an award of benefits.

## I. APPLICABLE LAW

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). The credit-as-true standard is met if the following conditions are satisfied: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion," (2) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," and (3) "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Id.* at 1020 (citations omitted).

## II. ANALYSIS

### A. Part One

There is no dispute that the ALJ failed to provide legally sufficient reasons for rejecting significant, probative evidence. (*See* Def.'s Br. & Mot. Remand at 10, conceding that the first

part of the credit-as-true standard is satisfied). Therefore, Plaintiff has met part one of the credit-as-true standard.

Although the Commissioner concedes error, the Commissioner never articulates which parts of the ALJ's opinion were erroneous. However, the Commissioner appears to dispute Plaintiff's argument that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of her treating psychiatrist, Dr. James Phelps ("Dr. Phelps"). (*See* Def.'s Br. & Mot. Remand at 7-9, arguing that the ALJ provided "some good reasons" for rejecting the "medical opinion evidence," such as Dr. Phelps' opinion).[3] As explained below, the Court finds that the ALJ erred in discounting Dr. Phelps' opinion.

Dr. Phelps' opinion conflicts with the opinions of the non-examining state agency physicians and psychologists.[4] The ALJ therefore needed to provide specific and legitimate reasons for rejecting Dr. Phelps' opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (explaining that "in the case of a conflict 'the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician'") (citation omitted); *Killian v. Barnhart*, 226 F. App'x 666, 668 (9th Cir. 2007) ("Killian's contention that the ALJ erred when he discounted her treating physician's opinion is flawed because the treating physician's opinion conflicted with that of a nonexamining physician, and the ALJ supported his decision with specific and legitimate reasons."). The Court concludes that the ALJ failed to meet that standard here.

---

[3] The Commissioner does not dispute Plaintiff's argument that the ALJ failed to give legally sufficient reasons for discounting Plaintiff's testimony, Plaintiff's parents' lay witness testimony, and the opinion of Plaintiff's examining psychologist, Dr. Julie Redner. (*See* Pl.'s Reply Br. at 5.)

[4] Unlike Dr. Phelps, the non-examining state agency physicians and psychologists found that Plaintiff could perform full-time work. (*Compare* Tr. 88-93, *and* 107-12, *with* Tr. 705, 1669-70.)

The Commissioner claims that the ALJ appropriately discounted Dr. Phelps' opinion on the grounds that (1) Dr. Phelps' opinion was "equivocal and unsupported by the totality of the medical evidence," including Dr. Phelps' own observations regarding Plaintiff's presentation, and (2) Dr. Phelps' opinion was "inconsistent with Plaintiff's ability to perform high-level coursework and obtain good grades while in college." (Def.'s Br. & Mot. Remand at 8.) The Court concludes that substantial evidence does not support discounting Dr. Phelps' opinion on these grounds.

First, substantial evidence does not support the ALJ's finding that Dr. Phelps' opinion was equivocal. Dr. Phelps stated that Plaintiff's level of function was "extremely low," and his conclusion was based on his observation that Plaintiff was unable to sustain concentration for more than one hour at a time.[5] (*See* Tr. 2082, referring to Plaintiff's "varying levels of attention and concentration" as "most problematic"; Tr. 705, stating that Plaintiff needed to reduce her accommodated community college coursework to a part-time basis and that Plaintiff's "ability to sit and function in a given role for hours at a time is extremely dubious"; Tr. 1978, reflecting that Plaintiff needed to "break[] up [her part-time] classwork into one hour periods" due to her "difficulty concentrating for prolonged periods of time"; Tr. 1669-70, opining that Plaintiff is permanently disabled due to her impaired "focus of attention," energy, and work tolerance, stating that Plaintiff's mood symptoms "have been extremely limiting in terms of consistent energy, alertness, and focus of attention," and adding that Plaintiff had a "downward

---

[5] The Court notes that Dr. Phelps treated Plaintiff for about eight years. (Tr. 784, 915, 1208.) The Court also notes that Dr. Phelps did "not detect malingering or exaggeration of symptoms," and Dr. Phelps confirmed that his observations and Plaintiff's reports were consistent with, and corroborated by, Plaintiff's parents' observations. (Tr. 680, 704, 1691.) That is significant because (1) as discussed, the Commissioner does not dispute that the ALJ erred in rejecting Plaintiff's testimony and her parents' testimony, and (2) the Commissioner does not assert that the ALJ needs to reevaluate Plaintiff's parents' testimony. (Def.'s Br. & Mot. Remand at 13.)

PAGE 7 – OPINION AND ORDER

progression" over eight years of treatment and there was "little prospect for a dramatic improvement sufficient for her to reverse her course and open the possibility of regular employment").

Second, substantial evidence does not support the ALJ's finding that Dr. Phelps' opinion was inconsistent with the totality of the medical evidence, including Dr. Phelps' own treatment observations. The following timeline demonstrates that Dr. Phelps' opinion is consistent with the record medical evidence:

- December 20, 2010: Plaintiff was "working really hard to get moderate progress" at school and "underst[ood] the need for better control of [mood and energy] cycling." (Tr. 516.)
- February 14, 2011: Plaintiff's memory was "still very significantly problematic but not easily targeted." (Tr. 513.)
- April 14, 2011: Plaintiff's bipolar medication was "not sufficient to control [her mood] cycles." (Tr. 510.)
- July 25, 2011: Plaintiff exhibited a period of "hypomania" that was "quite striking." (Tr. 504.)
- August 12, 2011: Dr. Phelps observed that "cognitively [Plaintiff was] still really struggling." (Tr. 502.)
- September 16, 2011: Plaintiff became "almost tearful" about the loss of her cat, Plaintiff laughed "incongruently when talking about her distress," Plaintiff "allude[d] . . . to some suicidal ideation," Plaintiff "show[ed] evidence of 'cycling' . . . into depression," Plaintiff "need[ed] better control" of her symptoms "to do well in school," and Plaintiff's symptoms were having "too much of an impact"

on, among other things, her ability "to focus her attention when hypomanic."
(Tr. 499-500.)

- October 6, 2011: Plaintiff's bipolar symptoms were "[w]orsening." (Tr. 497.)

- May 3, 2012: Dr. Phelps observed that Plaintiff "seem[e]d to be 'cycling' more." (Tr. 730.)

- June 14, 2012: Plaintiff's medication trial was "associated with dramatic worsening." (Tr. 728.)

- August 27, 2012: Plaintiff reported being "really troubled by the degree of symptoms she [was] experiencing." (Tr. 724.)

- January 17, 2013: Plaintiff's medication "exacerbat[ed]" her "bipolarity." (Tr. 714.)

- June 3, 2013: Plaintiff exhibited an "[o]verall significantly darker affect." (Tr. 702.)

- August 22, 2013: Dr. Phelps stated that Plaintiff's "ups and downs" were "still there," Plaintiff continued to experience "some" suicidal ideation, and Plaintiff was "having quite clear episodes of 'mood/energy cycling,' as . . . verified [by] her parents." (Tr. 694.)

- November 4, 2013: Dr. Phelps stated that he did "not doubt that indeed [Plaintiff's mental] illness is interfering with [her] quality of life to the point of inducing suicidal ideation," and that it "sound[ed] like [Plaintiff was] still 'cycling.'" (Tr. 689.)

- February 28, 2014: Dr. Phelps stated that Plaintiff still exhibited mood "cycling," and that "it d[id] indeed seem that these [periods of cycling] are substantial excursions that interfere with [Plaintiff's] function and are observable by e.g. [her] parents." (Tr. 680.)

- August 27, 2014: Dr. Phelps stated that if he did not "make some substantial further gains in control of mood cycling, [Plaintiff] just is not functional enough" to work. (Tr. 762.)

- October 27, 2014: Dr. Phelps stated that Plaintiff is "functionally remarkably impaired [despite] her otherwise superior capacities," that Plaintiff "continue[d] to have 'cycling' of mood and energy," and that Dr. Phelps "confirmed" that Plaintiff's parents "observ[ed]" the same cycling of mood and energy, which are "quite substantial and clearly interfere[] with [Plaintiff's] ability to progress functionally." (Tr. 784.)

- December 8, 2014: Plaintiff was "[s]till cycling." (Tr. 794.)

- March 2, 2015: Plaintiff "[a]ffirm[ed] passive suicidal ideation." (Tr. 823.)

- May 27, 2016: Plaintiff "lost her job after 3 months," Plaintiff's work productivity was "very low when depressed" and overall "just too slow," Plaintiff was "[n]ow unemployed [and] disappointed," and Plaintiff's parents "corroborate[d]" her mood cycling. (Tr. 1691.)

- November 6, 2016: Dr. Paige Warner, a licensed psychologist, concluded, based on "clinical data from [her] 25 sessions," that Plaintiff suffers from "severe" bipolar symptoms and Plaintiff could not "work in any job where she needs to maintain a steady energy level, and where she needs to interact with people regularly." (Tr. 1247.)

Third, and finally, substantial evidence does not support the ALJ's finding that Dr. Phelps' opinion is inconsistent with Plaintiff's college coursework or ability to obtain good grades in school. Indeed, the record reflects that after the alleged onset date of disability, Plaintiff

(1) dropped out of the University of Washington and University of Oregon because she continued to suffer from debilitating bipolar symptoms; and (2) received accommodations (i.e., extra time on tests, extra time to complete coursework, note takers), hired tutors, and could still only handle a part-time load. (Tr. 56, 66-67, 2077.) This evidence is not inconsistent with Dr. Phelps' opinion that Plaintiff cannot sustain full-time employment.

In sum, the Court agrees with the Commissioner and Plaintiff that the ALJ failed to provide legally sufficient reasons for rejecting significant, probative evidence, and specifically concludes that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Phelps' opinion.

**B.    Part Two**

The Court must next address whether the ALJ would be required to find Plaintiff disabled on remand, if the improperly discredited evidence, such as Dr. Phelps' opinion, Plaintiff's testimony, and Plaintiff's parents' testimony, were credited as true. *See Garrison*, 759 F.3d at 1020. The Court concludes that if this evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand.

The improperly discredited evidence reveals that (1) Plaintiff could only complete part-time school work, even with disability-related accommodations; (2) Plaintiff cannot maintain her concentration for more than an hour at a time; (3) Plaintiff suffers from daily mood cycles, which cause Plaintiff's mood to shift between hypomania and depression; (4) when Plaintiff is depressed, she "can't accomplish anything," can sleep "up to 16 hours a day," and experiences sudden crying spells; (5) when Plaintiff is hypomanic, she is angry, irritable, experiences "pressured speech," and responds inappropriately to teachers and supervisors; (6) Plaintiff's bipolar disorder impacts her ability to maintain a normal sleep schedule, which in turn impairs Plaintiff's energy levels and ability to stay awake; (7) Plaintiff had "trouble with falling asleep"

PAGE 11 – OPINION AND ORDER

when she was working a "four-hour job," (8) Plaintiff "tried multiple routes toward employment, with no success, despite diligent effort"; and (9) Dr. Phelps opined that Plaintiff's bipolar disorder prevents her from sustaining full-time work. (Tr. 55-72, 705, 1669-70, 1978, 2077-78, 2082.) Based on the VE's testimony, if the foregoing evidence were credited as true, Plaintiff could not sustain full-time work. (*See* Tr. 77, reflecting that the VE testified that a hypothetical worker could not sustain full-time work if she showed "anger or irritability in response to appropriate supervision . . . [and] it's a recurrent pattern," or if she was off task "more than approximately ten percent of the time"). Therefore, the ALJ would be required to find that Plaintiff is disabled on remand, and Plaintiff has satisfied part two of the credit-as-true standard.

### C. Part Three

The third and final part of the credit-as-true standard asks whether the record has been fully developed and whether further administrative proceedings would serve a useful purpose. *Garrison*, 759 F.3d at 1020. The Commissioner argues that the third part of the credit-as-true standard is not met because (1) the ALJ "has not had the opportunity to evaluate" Dr. Robert Hughes' ("Dr. Hughes") treatment note that postdates the ALJ's decision and, therefore, the ALJ "should have the opportunity to evaluate this evidence in light of the record as a whole, and reevaluate the opinion evidence," and (2) the ALJ "needs to further evaluate" Plaintiff's hearing impairment. (Def.'s Br. & Mot. Remand at 10.)

The record suggests that Plaintiff's bipolar disorder alone renders her disabled. Thus, the ALJ need not further evaluate Plaintiff's hearing impairment. Furthermore, the Appeals Council already found that Dr. Hughes' opinion does not relate to the relevant time period at issue here. The Commissioner's request to allow the ALJ to start over and hold a new hearing, reevaluate the medical evidence, reevaluate Plaintiff's symptoms, reevaluate Plaintiff's RFC, and issue a new opinion, is exactly the "heads we win; tails, let's play again" scenario that the Ninth Circuit

PAGE 12 – OPINION AND ORDER

instructs courts to avoid. *See Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Garrison*, 759 F.3d at 1021 ("Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the [third] part of credit-as-true analysis."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). The Commissioner has not identified a useful purpose that further proceedings would serve, and therefore the Court finds that Plaintiff has satisfied the third part of the credit-as-true standard.

      **D.    Serious Doubt**

Finally, the Commissioner argues that the Court should remand for further proceedings because the record creates serious doubt about whether Plaintiff is disabled. *See generally Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (explaining that even if the credit-as-true standard is met, the court "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled'" (quoting *Garrison*, 759 F.3d at 1021)). The Court disagrees. Dr. Phelps treated Plaintiff on numerous occasions over the course of eight years, and his opinion is consistent with, and corroborated by, Plaintiff's testimony and Plaintiff's parents' testimony. In the Court's view, the fact that Plaintiff performed well on one neuropsychological evaluation fails to create serious doubt about whether

Plaintiff suffers from debilitating mood cycles. Accordingly, the Court remands for an award of benefits.

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART the Commissioner's motion to remand (ECF No. 20), and remands this case for an award of benefits.

**IT IS SO ORDERED.**

DATED this 15th day of November, 2019.

_____
STACIE F. BECKERMAN
United States Magistrate Judge